```
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 05-10010-NMG |
| v. ) | |
| ) | |
| IGOR MOYSEYEV, ) | |
| SEVERIN YELAUN, ) | |
| DAVID S. TAMAREN, and ) | |
| JOHN F. MONTONI, ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S OPPOSITION TO MOTIONS TO SEVER
BY DEFENDANTS MONTONI, YELAUN, AND MOYSEYEV**

The United States of America, by and through its undersigned attorneys, respectfully opposes the motions to sever filed by defendants John Montoni, Severin Yelaun, and Igor Moysevev, because defendants have not met their heavy burden of making a strong and specific showing of prejudice warranting severance notwithstanding the substantial benefits and economies of a joint trial. Defendants assert three reasons to justify severance: first, that their respective defenses will be so antagonistic as to preclude a fair trial; second, that each will suffer "spillover" prejudice from evidence admitted solely against the others; and third, that the government intends to introduce incriminating hearsay statements made by non-testifying codefendants in violation of Bruton v. United States, 391 U.S. 123 (1968).

The Court should deny the motions to sever because none of

defendants' arguments has merit. First, defendants have not shown that their defenses are actually antagonistic, let alone pointed to evidence any of them will introduce of the others' guilt. Second, there will be no "spillover" prejudice sufficient to warrant severance because all or nearly all of the government's evidence is admissible against all four codefendants (and, to the extent it is not, the jury will have no trouble compartmentalizing it). Third, it is too early to know whether <u>Bruton</u> problems will arise at trial, and if they do, the proper remedy is to redact the offending statements as needed, not conduct multiple trials.

## BACKGROUND

The government's evidence will show that the four defendants worked together to defraud insurance companies by submitting bills for medical tests that were unnecessary and/or never actually performed. Each of the defendants played a critical role in the fraud. Yelaun and Moyseyev operated health care clinics that billed insurance companies for the nonexistent or unnecessary tests and laundered the illegal proceeds. Tamaren, a medical doctor, prescribed medically unnecessary tests that Yelaun and Moyseyev billed for. Montoni, a chiropractor who was not even licensed to prescribe such tests, did likewise, and also signed reports of tests that he had not performed (some of which were prescribed by Tamaren and/or had never even been done).

Virtually all of the government's evidence will be admissible against all four defendants and will be necessary to prove each of them guilty. For example, the indictment charges that 15 individual patients never received certain tests that the insurance companies were billed for; the government expects to call all 15 patients to the witness stand and to introduce parts of their medical records. The government also expects to call witnesses who will testify about how the clinics were run, what role each defendant played at the clinics, and how the billing process worked, as well as insurance company witnesses to testify about the receipt and payment of claims. The government also will offer evidence about when the tests in question are actually medically necessary and about how they are performed and who may prescribe, perform, and certify them. All of this evidence will help prove the existence of a conspiracy among the codefendants to commit mail, wire, and health care fraud, and therefore will be admissible against all four of them.

The government expects the presentation of its evidence to take at least several weeks. It will consist primarily of civilian and expert witness testimony and of documents that will need to be shown and explained to the jury. If the defendants are severed, this presentation will need to be repeated -- probably in its entirety -- at the trial of each one of them; that would require an enormous expenditure of time, energy, and

judicial resources, and would seriously inconvenience numerous civilian witnesses and jurors.

### ARGUMENT

The Federal Rules of Criminal Procedure explicitly contemplate joint trials for defendants who are charged with participating in the same "series of acts or transactions constituting an offense or offenses." Fed. R. Cr. P. 8(b). As the Supreme Court observed in Zafiro v. United States, 506 U.S. 534 (1993):

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials play a vital role in the criminal justice system. They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

Id. at 537 (internal quotation marks omitted). The First Circuit has repeatedly endorsed the general rule that "persons who are indicted together should be tried together," United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993), because "[t]his practice helps both to prevent inconsistent verdicts and to conserve resources (judicial and prosecutorial)," id. The presumption in favor of joint trials is particularly strong in a conspiracy case such as this one. See United States v. Brandon, 17 F.3d 409, 440 (1st Cir. 1994) ("In the context of conspiracy, severance will rarely, if ever, be required.") (internal quotation marks and citation omitted); United States v. Perkins, 926 F.2d 1271, 1280 (1st Cir. 1991) ("Co-conspirators are

customarily tried together absent a strong showing of prejudice.").

A defendant in a multi-defendant conspiracy case can succeed in obtaining a separate trial only by making "a strong and specific showing of prejudice." United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997). "The prejudice shown must be greater than that inherent in trying multiple counts and multiple defendants together." Id. Put another way, "[t]o obtain severance, [a defendant] must show actual prejudice resulting from the joinder . . . not merely that he would have a better chance of acquittal if" severance were granted. United States v. L'Allier, 838 F.2d 234, 241 (7th Cir. 1988). "Actual prejudice means that the defendant could not have a fair trial without severance." United States v. Balzano, 916 F.2d 1273, 1281 (7th Cir. 1990). Indeed, because of the strong preference for joint trials, denial of a severance motion will be reversed "only if the district court's decision deprived defendant of a fair trial, resulting in a miscarriage of justice." United States v. Brennan, 994 F.2d 918, 924 (1st Cir. 1993) (internal quotation marks and citation omitted); United States v. Tejeda, 974 F.2d 212, 219 (1st Cir. 1992) (same).

A.   Defendants have not shown that they will assert the kind of antagonistic and inconsistent defenses that mandate severance.

The Supreme Court has held that "conflicting defenses of codefendants do not necessarily require severance." Rose, 104 F.3d at 1415 (citing Zafiro v. United States, supra). Rather, "antagonistic defenses only require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other." Id. That is not the case here. According to the severance motions filed by Montoni, Moyseyev, and Yelaun, each will argue to the jury that he was not only innocent but ignorant of any fraud. This does not even amount to the type of garden-variety "finger pointing" that is commonplace in codefendant cases and that almost never requires severance. See United States v. Arruda, 715 F.2d 671, 679 (1st Cir. 1983). Defenses of innocence and ignorance asserted by multiple codefendants are not inherently antagonistic because the jury can believe all of them.

Moreover, "[t]he true level of antagonism between the defenses [of codefendants] is measured by the evidence actually introduced at trial," not by the arguments of counsel. United States v. Smith, 46 F.3d 1223, 1230 (1st Cir. 1995). None of the defendants has pointed to any evidence he intends to introduce which shows that he must be innocent because another is guilty. On the contrary, all of the defendants have indicated that none

of them intends to testify.  It also remains unclear at this point which of the defendants will actually go to trial and present evidence.  Under these circumstances, defendants have not come close to making the "strong and specific showing of prejudice" needed for severance.  Rose, 104 F.3d at 1415.  Cf. United States v. Angiulo, 897 F.2d 1169, 1195 (1st Cir.) (collecting cases in which the First Circuit denied severance despite "sharply antagonistic defense theories"), cert. denied, 498 U.S. 845 (1990).

Citing United States v. Boscia, 573 F.2d 827 (3d Cir. 1978), Montoni also argues that he requires a separate trial so that he might call one of his codefendants to testify on his behalf.  But Boscia itself makes clear that "[b]are assertions that co-defendants will testify are insufficient" to justify severance, id. at 832, and Montoni has offered nothing more than just such a bare assertion.

B. A joint trial will not result in an unfairly prejudicial "spillover" of evidence against any of the defendants.

As noted above, most if not all of the government's evidence -- including the testimony of patients, clinic workers, insurance company representatives, and experts, as well as medical and insurance records -- will be admissible against all of the defendants.  Accordingly, there will be little or no "spillover" of evidence from one defendant to another.  And even if some of the evidence applies with greater force to one

defendant than another, the First Circuit has held that "[t]he fact that a particular defendant plays a minor role and that the evidence against him can be presented quickly does not make it automatically unlawful to try him with more important figures." United States v. Rawwad, 807 F.2d 294, 295 (1st Cir. 1986). No defendant can obtain severance without showing prejudice "greater than that inherent in trying multiple counts and multiple defendants together." Rose, 104 F.3d at 1415. To the extent some spillover occurs, the Court can cure any potential prejudice through appropriate limiting instructions to the jury. See Zafiro, 506 U.S. at 539-40; see also United States v. Bieganowski, 313 F.3d 264, 287 (5th Cir. 2002) (in multi-defendant conspiracy case involving fraud at medical clinics, relatively low-level defendant could not demonstrate prejudicial spillover where jury instructions afforded that defendant adequate protection); United States v. DeLeon, 187 F.3d 60, 64 (1st Cir. 1999)(affirming denial of severance because court instructed jury to consider charges and evidence against each defendant individually).

C.   Severance to avoid Bruton problems is unnecessary and the motions seeking it are premature.

Although it is true that each defendant has made admissions that include references to one or more codefendants, not all of those references are inculpatory, and the inculpatory ones can easily be excised or redacted as needed to obviate any Bruton

problems. Accordingly, severance to avoid <u>Bruton</u> problems will not be needed in this case. In the event the government intends to introduce a hearsay statement by a non-testifying defendant that inculpates a codefendant, the government will consult with that codefendant about the portions of the statement, if any, that need to be excised or redacted to avoid a <u>Bruton</u> issue. If the parties cannot agree, the Court can then consider the parties' respective positions and rule on the need for excisions and/or redactions.

At this juncture, moreover, a motion to sever based on <u>Bruton</u> is premature and speculative. <u>Bruton</u> problems do not even arise if the defendant who made the statement chooses to testify; or if the codefendant who is inculpated by the statement chooses to plea bargain and avoid a trial; or if the government does not offer the inculpatory portion of the statement into evidence. Where, as here, trial is still six months away, it is impossible to know who among the four defendants will choose to go to trial, who will choose to testify, and, in light of those decisions, which statements (if any) the government will seek to offer. Defendants are always free to renew their motions to sever if and when an actual <u>Bruton</u> problem arises.

WHEREFORE, the government respectfully requests that the defendants' respective motions to sever be DENIED.

```
                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney


                        By:   /s/ William Weinreb
                              WILLIAM WEINREB
                              JAMES J. MCGOVERN
                              GREGG SHAPIRO
                              Assistant U.S. Attorneys
```